**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| EVELYN MCELROY DUNN, ) | CASE NO. 5:13-CV-01527 |
| Plaintiff, ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, ) Acting Commissioner of Social Security, ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Evelyn McElroy Dunn ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this Memorandum Opinion and Order.

## I.  PROCEDURAL HISTORY

On March 10, 2010, Plaintiff filed her application for POD and DIB, alleging a disability onset date of July 16, 2009.  (Transcript ("Tr.") 13.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On March 12, 2012, an ALJ held Plaintiff's

hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On March 21, 2012, the ALJ found Plaintiff not disabled. (Tr. 10.) On May 15, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On July 15, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 16, 17, 18.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating physician; and (2) the ALJ failed to meet his burden at Step Five of the sequential evaluation.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in March 1963 and was 46-years-old on the alleged disability onset date. (Tr. 21.) She had at least a high school education and was able to communicate in English. (*Id.*) Prior to her alleged disability onset date, Plaintiff worked primarily as a blender (pattern repairer), wax room supervisor, nursing assistant, and medical assistant. (Tr. 202.)

### B. Medical Evidence

#### 1. Medical Reports

On June 3, 2008, an x-ray of Plaintiff's lumbosacral spine, pelvis, and bilateral hips revealed minimal scoliosis convex to the right; mild posterior displacement of the

L3 vertebral body over L4; mild to moderate degenerative disc disease at L1, L2, L3, and L4 disc levels; mild to moderate facet degenerative arthritis throughout the lumbar spine, which was worse at L5-S1; and mild degenerative changes seen involving the sacroiliac joints and the pubic symphysis. (Tr. 255.)

Plaintiff was admitted to the emergency room on June 15, 2008, for severe back pain. (Tr. 305.) On July 11, 2008, she underwent a right L4-L5 far lateral extraforaminal microdiskectomy and L1-L2 decompressive laminectomies through a separate incision. (Tr. 302.) Treatment notes indicate an increased degree of difficulty in performing the surgery due to Plaintiff's morbid obesity. (*Id.*) The pre- and post-operative diagnoses included right L4-L5 far lateral disc herniation, L1-2 spinal stenosis, and morbid obesity. (*Id.*)

On July 24, 2008, Plaintiff reported to David R. Blatt, M.D., for a post-operative visit. (Tr. 291.) Dr. Blatt reported: "She is better since surgery. She says her leg pain is different. She has some dysesthetic sensation, it bothers her more at night. She says it hurts to touch the thigh. It is muscular pain, however, she is having some cramps across the back. She looks more comfortable than when I first met her. Strength is intact. Her incision looks good and sutures were removed." (Tr. 291.) Dr. Blatt noted that Plaintiff was doing well and would be starting physical therapy. (*Id.*) He also indicated that he told Plaintiff she would need to gradually increase her walking and that she must lose significant weight and take better care of herself. (*Id.*)

On August 28, 2008, Dr. Blatt reported that Plaintiff was "so much better." (Tr. 290.) He noted that Plaintiff's "back feels great" and that she was walking well and had excellent strength. (*Id.*) He reported that Plaintiff had started physical therapy and that

she was "very pleased."  (*Id.*)

On September 23, 2008, Plaintiff presented to Yiping Wang, M.D., to whom she reported that her back and hip pain had improved after surgery.  (Tr. 242.)  Dr. Wang reported that Plaintiff's back was grossly normal, but that she had leukocytosis and thrombocytosis.  (Tr. 243, 245.)

In February and March 2009, Plaintiff complained of shoulder pain.  (Tr. 360-362.)  She reported that although her medication provided a fair amount of relief, she had to split her Vicodin dose in half due to nausea.  (Tr. 361.)  Monique S. Robinson, M.D., diagnosed Plaintiff with rotator cuff syndrome.  (Tr. 363.)  Radiological reports of Plaintiff's right and left shoulder from February 14, 2009, and March 20, 2009, were unremarkable.  (Tr. 309-310.)

On April 27, 2009, Plaintiff reported to Josephine Fernando, M.D., for shoulder pain and tingling/numbness of the right fingers.  (Tr. 357.)  Dr. Fernando prescribed medication and administered a cortisone injection into Plaintiff's right shoulder.  (Tr. 359.)  On May 12, 2009, Deborah Ewing Wilson, D.O., reviewed a nerve conduction study and assessed right ulnar neuropathy, at the elbow, mild in degree electrically and mild chronic right C5-6 radiculopathy.  (Tr. 298.)  On June 11, 2009, Plaintiff reported to Stephen Cheng, M.D., for shoulder pain.  (Tr. 354.)  She was treated with pain relief injections.  (*Id.*)

On September 16, 2009, Plaintiff reported that she was experiencing low back pain that was different from the pain she had experienced pre-surgery.  (Tr. 233.)  She reported that she had been laid off from work and was not treating with her surgeon any longer.  (*Id.*)  Plaintiff's diagnosis included diabetes mellitus type II, controlled;

4

postlaminectomy syndrome; and hypertension.  (*Id.*)  Plaintiff underwent an x-ray of her lumbosacral spine on September 17, 2009, which revealed disc space narrowing at L4-L5 with vacuum disc phenomenon; some narrowing at the L3-L4 posteriorly; facet hypertrophy seen from L3 to the sacrum; and intact pedicles.  (Tr. 308.)

On September 25, 2009, Plaintiff reported to Douglas Long, P.A., complaining of persistent back pain, worsened with bending, twisting, and prolonged car rides.  (Tr. 340.)  On examination, Plaintiff had limited range of motion and pain with motion, and straight leg testing was positive.  (Tr. 341.)  She had normal reflexes and strength in her lower extremities.  (*Id.*)  She had no pedal edema, clubbing, or cyanosis, and she had no numbness or tingling in her legs.  (*Id.*)

On October 12, 2009, Plaintiff underwent a lumbar spine MRI without contrast.  (Tr. 261.)  The impression was disc herniation centrally at L1-2; disc bulging at L4-5 eccentric towards the right with right-sided foraminal narrowing and possible right L4 nerve root impingement; multilevel disc dehydration and facet hypertrophy; and status post laminectomy at L1-2.  (*Id.*)  Plaintiff reported to Mark J. Myrna, M.D., on October 30, 2009, requesting pain medication due to her current medications failing to relieve her pain.  (Tr. 332.)

On November 4, 2009, Plaintiff reported to Vasantha K. Kumar, M.D., a pain management specialist.  (Tr. 325-328.)  Plaintiff reported a moderate benefit from her back surgery but indicated that she was still experiencing lower back pain.  (Tr. 326.)  She stated that her pain level was a six out of ten (interfering with her activities more than 50% of the time) and was worsened by prolonged activity, but improved with rest and pain medications.  (*Id.*)  Dr. Kumar noted that Plaintiff was morbidly obese and had

mild facet tenderness in her lower lumbar area, that a myofascial spasm was present without trigger points, and that her deep tendon reflexes were diminished in the legs. (Tr. 328.) The assessment consisted of post-laminectomy lumbar pain, lumbar spondylosis, and lumbar radiculopathy. (*Id.*)

On November 17, 2009, Plaintiff reported to the Robinson Rehab Center and Sports Clinic for physical therapy. (Tr. 518.) She indicated that she "currently worked as [a] laborer." (*Id.*) She reported that her pain was a 7 out of 10 at the worst and a 4 out of 10 at the best. (*Id.*)

On June 10, 2010, Richard Hirsch, M.D., assessed degenerative disc space narrowing at L1-2, L3-4, and L4-5. (Tr. 481.)

On August 11, 2010, Plaintiff presented to Inderprit Singh, M.D., for an initial evaluation. (Tr. 522.) Dr. Singh noted that Plaintiff was comfortable, cooperative, and without any distress. (*Id.*) Dr. Singh further noted that Plaintiff had a normal gait and a full range of motion on the thoracic spine, elbows, wrists, and hands with no signs of synovitis, but she had decreased range of motion on the cervical spine, moderate decrease in range of motion on the lumbosacral spine, minimal decrease in range of motion in the shoulders, and minimal crepitus during the range of motion of the knee. (*Id.*) Dr. Singh assessed bilateral carpal tunnel syndrome, low back pain, generalized body pains, diarrhea, allergic rhinitis, and a history of leukocytosis. (Tr. 553.)

Radiological reports from August 30, 2010, indicated that Plaintiff likely had degenerative changes of the spine, shoulders, elbows, wrists, hips, ankles, and feet, but that there was no evidence of osseous metastatic disease. (Tr. 630.)

On September 8, 2010, Dr. Singh completed a physical residual functional

capacity assessment.  (Tr. 524-525.)  He concluded that Plaintiff was "disabled on account of neck pain and low back pain."  (Tr. 524.)  Dr. Singh opined that Plaintiff could lift and/or carry less than or equal to five pounds, the maximum occasionally was less than or equal to five pounds, and the maximum frequently was less than or equal to five pounds.  (*Id.*)  He further opined that Plaintiff could stand and/or walk a total of two hours in an eight-hour workday and could stand and/or walk without interruption for 10 minutes.  (Tr. 524.)  Dr. Singh concluded that Plaintiff could sit for a total of two hours in an eight-hour workday and could sit without interruption for 15 to 20 minutes.  (Tr. 524.)  He opined that Plaintiff could never climb, stoop, crouch, kneel, or crawl and could occasionally balance.  (Tr. 525.)  He further indicated that Plaintiff's abilities to reach, handle, feel, and push/pull were affected by her impairments, and that she should avoid heights, moving machinery, and temperature extremes.  (Tr. 525.)

From September 2010 through July 2011, Plaintiff treated with the office of Charles Dhyanchand, M.D.  (Tr. 569-570, 571-572, 575-577, 578-579, 580-582, 612-613.)  During an appointment with Dr. Dhyanchand on May 2, 2011, Plaintiff complained of pain and swelling in her right elbow, a "rippling sensation" in her right arm when lying down, and leg weakness.  (Tr. 595-596.)  She was diagnosed with depression and lateral epicondylitis of the elbow.  (Tr. 595.)

On July 27, 2011, Plaintiff reported to the emergency room with complaints of neck, chest, and arm pains.  (Tr. 604.)  Laboratory results revealed leukocytosis.  (Tr. 605.)  The diagnostic impression included atypical chest pain; neck pain that was suspected to be musculoskeletal; and intravenous analgesic therapy.  (Tr. 606.)  Plaintiff was prescribed Vicodin, Flexeril, and Prednisone and was discharged in stable

condition. (*Id.*)

On September 7, 2011, Dr. Dhyanchand completed a form for Job and Family Services. (Tr. 621-625.) On the form, Dr. Dhyanchand indicated that Plaintiff's medical conditions included degeneration of the lumbar disc, type II diabetes mellitus, leukocytosis, depression, fibromyalgia, and hypertension. (Tr. 625.) He opined that Plaintiff could lift, carry, push, or pull five to ten pounds frequently and 11 to 20 pounds occasionally. (Tr. 621.) He concluded that Plaintiff could stand/walk for less than a total of two hours in an eight-hour workday and less than one hour without interruption, and that she could sit for a total of four to six hours in an eight-hour workday and less than two hours without interruption. (Tr. 622.) In addition, Dr. Dhyanchand assessed that Plaintiff had moderate limitations with regard to pushing/pulling, bending, reaching, and handling, but she had no limitations with repetitive foot movement, seeing, hearing, or speaking. (Tr. 622.) He indicated that Plaintiff's health status was poor but stable. (Tr. 625.)

### 2. Agency Reports

On June 9, 2010, Sudhir Dubey, Psy.D., a state medical consultant specializing in clinical psychology, completed a Disability Assessment Report on behalf of Plaintiff. (Tr. 469-474.) Plaintiff reported that she last worked in July of 2009 at a factory and that she was laid off for lack of work. (Tr. 470.) She reported that her employment was not affected by her mental or physical disorder and that there were not acute episodes that affected her employment. (*Id.*) Dr. Dubey diagnosed a pain disorder with general medical and psychological factors and health and functional changes, and assigned her

8

a GAF score of 65.[1] (Tr. 473.) Dr. Dubey concluded that Plaintiff's mental ability to withstand stress and pressure associated with day-to-day work activity was mildly impaired. (Tr. 474.)

Lokendra Sahgal, M.D., a state medical consultant, examined Plaintiff on June 10, 2010. (Tr. 476-485.) Plaintiff's straight-leg testing was negative, both in the sitting and supine positions. (Tr. 477.) She had no sensory or motor loss. (*Id.*) Her deep tendon reflexes were 1+ and equal bilateraly. (*Id.*) Romberg sign was negative. (*Id.*) She had good palpable pulses, 2/4 in both lower extremities. (*Id.*) Her manual muscle strength in all extremities was 5/5 against maximum resistance. (Tr. 477-478.) Plaintiff's grasp, manipulation, pinch, and fine coordination in both hands were normal. (Tr. 478.) She had no muscle spasm, no muscular atrophy, and no abnormal reflexes. (*Id.*) Plaintiff's cervical spine range of motion was normal, and her dorsolumbar spine range of motion was normal, but she complained of pain. (*Id.*) Plaintiff's shoulder abduction and knee flexion range of motion were restricted, and Dr. Sahgal noted that some range of motion restrictions were probably due to obesity. (*Id.*) Dr Sahgal concluded:

> [Plaintiff's] ability to do lifting or carrying is definitely impaired due to her chronic low back pain. [She] had no difficulty with tasks requiring walking or handling objects. [Plaintiff] had no difficulty with speech or hearing. Her mental acuity was normal. [Plaintiff's] ability to climb, balance, stoop, cross, kneel, or crawl was not limited. She was able to walk without any assistance. Was able to bend with some pain. Was able to squat, was able to walk on

---

[1] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association. A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.

>heels and toes without any difficulty. Her physical functions of seeing, hearing, and speaking are not impaired. Grasp in both hands was normal.

(Tr. 478.)

On July 2, 2010, state agency physician Leigh Thomas, M.D., reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment. (Tr. 500-507.) Dr. Thomas opined that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for about six hours total in an eight-hour workday; and standing and/or walking for a total of at least two hours in an eight-hour workday. (Tr. 501.) Dr. Thomas opined that Plaintiff's ability to push and pull was unlimited other than as shown for lifting and/or carrying. (*Id.*) Dr. Thomas concluded that Plaintiff could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps or stairs; and she could occasionally stoop, crouch, and crawl. (Tr. 502.) On November 25, 2010, David Brock, D.O., another state agency physician, reviewed Plaintiff's records and agreed with Dr. Thomas's assessment. (Tr. 565.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that she was unable to work due to constant pain in her back. (Tr. 36.) She had surgery on her back, but it did not completely relieve her pain. (Tr. 36-37.) "[I]f I walk too much, meaning too much from, from one of the first parking spots in the grocery store parking lot to the front door, my hips burn like they're on fire. My back feels like if I move wrong, that I'm just going to–that it's just going to break and, and I'm going to fall backwards." (Tr. 38.) Plaintiff uses painkillers and muscle relaxers two or three times per month. (Tr. 38-39.) She further testified that she suffered from

10

weekly muscle spasms in different parts of her body.  (Tr. 39.)  Plaintiff had diabetes, which was adequately controlled.  (Tr. 40.)  She was also autoimmune and suffered from depression.  (Tr. 41, 43.)

### 2. Vocational Expert's Hearing Testimony

Ted S. Macy, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience who could perform work at the light level of exertion, except she could stand and walk for four hours during an eight-hour day.  (Tr. 49.)  She could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds.  (*Id.*)  She could occasionally stoop, crouch, and crawl.  (*Id.*)  The VE testified that the individual could perform Plaintiff's past work as a blender/pattern repairer.  (Tr. 50.)  The VE further testified that the individual could perform such jobs as a bench hand, a table worker, and a final assembler.  (Tr. 50-51.)

The ALJ asked the VE to assume a second hypothetical individual of Plaintiff's age, education, and work experience, who had the same limitations as the individual described in the previous hypothetical, except that she could perform work at the sedentary level of exertion rather than the light level.  (Tr. 51.)  The VE testified that the individual could perform the jobs he previously named.  (*Id.*)

The ALJ asked the VE to assume a third hypothetical individual with the same limitations as described in the second hypothetical, but add that the individual would also require an at-will, sit/stand option where she would be able to shift positions every 20 minutes, but in doing so, she would not have to take a break to stop her work.  (Tr.

52.)  The VE testified that the individual would be capable of performing all of the jobs he previously named, as long as the individual was able to stay at the workstation and keep busy, using both hands while either sitting or standing.  (*Id.*)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled

12

regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since July 16, 2009, the alleged onset date.

3. The claimant has the following severe impairments: multi-level degenerative disc disease in the lumbar spine with disc herniation and bulging with right-sided foraminal narrowing and possible nerve root impingement; status post microdiscectomy and laminectomy in the lumbar spine; right ulnar neuropathy and; cervical radiculopathy; leukocytosis; diabetes mellitus; and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can stand/walk four hours during an eight-hour day. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. She can occasionally stoop, crouch, and crawl.

6. The claimant is capable of performing past relevant work as a blender/pattern repairer. According to the vocational expert, this work

13

>     does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7.  The claimant has not been under a disability, as defined in the Act, from July 16, 2009, through the date of this decision.

(Tr. 13-22.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

14

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy,* 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred by Failing to Give Controlling Weight to the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Singh. "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson,* 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id*.

Here, in rejecting the opinion of Dr. Singh, the ALJ failed to meet the "good

15

reasons" requirement of the treating physician rule. The ALJ did not give controlling weight[2] to Dr. Singh's September 9, 2010, medical source statement, noting that:

> Dr. Singh's opinion that the claimant is disabled is on an issue reserved to the Commissioner of Social Security, or to the Commissioner's designees. . . . A finding that an individual is "disabled" or "unable to work," is an administrative finding and is an issue reserved to the Commissioner. . . . Medical opinions on these issues must not be disregarded; but cannot be entitled to controlling weight or given special significance, even when offered by a treating source.

(Tr. 20.) The ALJ was justified in giving no special deference to Dr. Singh's opinion that Plaintiff was "disabled on account of neck pain and low back pain." (Tr. 524.) It is well established that certain issues are reserved to the Commissioner for determination. *See* 20 C.F.R. § 416.927(d). Among these are whether a claimant is disabled. *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Dr. Singh, however, did not merely conclude that Plaintiff was disabled; rather, his September 2010 medical source statement also included his opinion regarding Plaintiff's residual functional capacity (RFC). (Tr. 524-525.) Dr. Singh opined that Plaintiff could lift or carry less than five pounds; stand/walk for two hours a day in increments of ten minutes; sit two hours a day for 15 to 20 minutes at a time; never climb, stoop, crouch, kneel, or crawl; and occasionally balance. (*Id.*) He also opined

---

[2] After describing the physical limitations Dr. Singh assessed in his medical source statement, the ALJ concluded that the opinion "is not given significant weight." (Tr. 20.)

16

that Plaintiff was limited in reaching, handling, feeling, pushing, and pulling due to bilateral carpal tunnel syndrome, and that she must avoid heights, moving machinery, and temperature extremes. (Tr. 525.) While the ALJ recounted Dr. Singh's RFC opinion his written decision, he did not offer any reasons for his ultimate determination that the opinion was not entitled to significant weight. (Tr. 19-20.) Even a review of the ALJ's decision as a whole does not provide sufficient information necessary for this Court to determine why the ALJ rejected Dr. Singh's assessment of Plaintiff's specific functional limitations.[3] Accordingly, the ALJ's unsatisfactory explanation for rejecting Dr. Singh's RFC opinion frustrates the dual purposes of the "good reasons" requirement: It neither sufficiently describes to Plaintiff the basis for the ALJ's conclusions, nor provides this Court with adequate material for meaningful review. For this reason, Plaintiff's case is remanded to the ALJ for a more complete examination of Dr. Singh's September 2010 opinion (Tr. 524-525), and, if the ALJ declines to assign the opinion controlling weight, a detailed explanation of why he reached that conclusion.

---

[3] This is not a case in which the ALJ's discussion of other medical opinions in the record provides a clear basis for rejecting the treating physician's opinion. *See, e.g., Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470-71 (6th Cir. 2006) (finding that the ALJ's discussion of other medical evidence and opinions made it clear that the opinions of the claimant's treating physicians were inconsistent with the record evidence as a whole and, thus, "implicitly provided" sufficient reasons for rejecting their opinions). Rather, the ALJ's discussion of other medical opinions in the record relative to Plaintiff's physical limitations is similarly brief and conclusory. For example, in rejecting Dr. Dhyanchand's September 7, 2011, physical RFC opinion, the ALJ stated only that the opinion "is not consistent with the medical evidence of record or even with his own treatment notes." (Tr. 20.) In assessing Dr. Sahgal's June 2010 opinion, the ALJ's only stated reason for giving the opinion "some weight" was because it was "somewhat vague." (Tr. 19.)

### 2. The ALJ Failed to Meet His Burden at Step Five of the Sequential Evaluation.

Plaintiff argues that the ALJ did not meet his burden of proving that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. According to Plaintiff, the ALJ erred by failing to take into account the limitations reflected in Dr. Singh's September 2010 RFC opinion (Tr. 524-525) and in Dr. Dhyanchand's September 2011 RFC opinion (Tr. 621-625) when presenting his hypothetical questions to the VE and when determining Plaintiff's RFC.

At the fifth and final step of an ALJ's analysis, the ALJ must determine whether, in light of the claimant's residual functional capacity, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman* v. Comm'r of Soc. Sec., 105 F. App'x 794, 799 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Workman*, 105 F. App'x at 799 (quoting *Varley,* 820 F.2d at 779).

As explained in the previous discussion of Plaintiff's first assignment of error, the

ALJ failed to provide good reasons for rejecting Dr. Singh's opinion regarding Plaintiff's physical limitations.[4]  The issue of whether the ALJ failed to meet his burden at Step Five of the sequential evaluation by not accounting for the limitations set forth by Dr. Singh is dependent upon the weight assigned to Dr. Singh's opinion.  If, on remand, the ALJ assigns controlling weight to Dr. Singh's opinion regarding Plaintiff's physical limitations, he is required to account for those limitations in Plaintiff's RFC.  In the

---

[4]  In her Brief on the Merits, Plaintiff does not raise as error the ALJ's assessment of Dr. Dhyanchand's September 2011 RFC opinion under the treating physician rule.  In her Reply Brief, however, Plaintiff notes that Defendant "misconstrues the Plaintiff's argument" as it relates to the opinions of Drs. Singh and Dhyanchand, explaining that "[i]n reality, the Plaintiff objects to the ALJ's insufficient analysis of these treating doctor opinions."  (Plaintiff's Reply, Doc. No. 18 at 3.)  Plaintiff further argues that "[t]he ALJ's *failure to give proper weight to the opinions of Dr. Singh and Dr. Dhyanchand* led to the ALJ formulating an RFC that does not truly reflect the Plaintiff's limitations."  (*Id.* at 7) (emphasis added).  Thus, Plaintiff effectively raises as error the ALJ's assessment of Dr. Dhyanchand's opinion under the treating physician rule for the first time in her Reply Brief.  Plaintiff is cautioned that substantive arguments should not be presented for the first time in a Reply Brief, as such untimely arguments may be deemed waived.  See *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004) (declining to consider issues not raised in the appellant's opening brief); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009) ("These waiver and forfeiture rules ensure fair and evenhanded litigation by requiring parties to disclose legal theories early enough in the case to give an opposing party time not only to respond but also to develop an adequate factual record supporting their side of the dispute.").  While it is questionable whether the ALJ's conclusion that Dr. Dhyanchand's RFC opinion was not entitled to controlling weight because it was "not consistent with the medical evidence of record or even with his own treatment notes" satisfies the "good reasons" requirement of the treating physician rule, this Court declines to consider an issue that Plaintiff has waived.  Accordingly, this Court will assume, without deciding, that Dr. Dhyanchand was one of Plaintiff's treating physicians and that the ALJ's reasons for rejecting his September 2011 RFC opinion satisfies the "good reasons" requirement of the treating physician rule.  Under such facts, the ALJ was not required to account for Dr. Dhyanchand's opinions when determining Plaintiff's RFC.

alternative, if the ALJ declines to give controlling weight to Dr. Singh's opinion and provides "good reasons" for doing so, he is not required to incorporate the limitations reflected in Dr. Singh's opinion in Plaintiff's RFC.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 17, 2014